UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RANDAL HAYWARD,

           Plaintiff,                                    Hon. Ellen S.  Carmody

v.

                                               Case No. 1:11-cv-68

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

_____/


**OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act.  On April 12, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #10).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

1

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 49 years old at the time of the ALJ's decision.  (Tr. 24, 87).  He possesses a ninth grade education and worked previously as a laborer, painter, and packer/shipper. (Tr. 23, 33, 107-12, 124, 130-34).

Plaintiff applied for benefits on December 6, 2006, alleging that he had been disabled since October 2, 2005, due to neck pain, back pain, abdominal pain, hernia, and migraines.  (Tr. 87-95, 123).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 53-86).  On March 24, 2009, Plaintiff appeared before ALJ Randolph Schum, with testimony being offered by Plaintiff and vocational expert, John McGowan. (Tr. 31-52).  In a written decision dated June 1, 2009, the ALJ determined that Plaintiff was not disabled.  (Tr. 13-24).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-5).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's sacrum and coccyx, taken on August 2, 2000, revealed "no evidence of fracture or subluxation" and "no evidence of a constructive or productive bony process."

(Tr. 216). X-rays of Plaintiff's right shoulder, taken the same day, were "negative." (Tr. 216). On October 3, 2005, Plaintiff reported that his back pain was "relieved by stretching." (Tr. 272). On November 11, 2005, Plaintiff was examined by Dr. Kurt Lindberg. (Tr. 268-69). Plaintiff reported that he was experiencing neck pain. (Tr. 268). An examination of Plaintiff's neck revealed that it was "mildly tender [with] full range of motion." (Tr. 269).

X-rays of Plaintiff's right shoulder, taken on October 2, 2006, were "negative." (Tr. 211, 267). X-rays of Plaintiff's cervical spine, taken on October 17, 2006, revealed "neural foraminal compromise, moderate on the left at C3-C4 and mild on the right at C4-C5." (Tr. 262). This examination also revealed that "the height, alignment and interspacing of the vertebral bodies are within normal limits." (Tr. 262).

On or about October 17, 2006, Dr. Kurt Lindberg completed a report regarding Plaintiff's impairments and limitations. (Tr. 166-67). The doctor reported that Plaintiff can never lift any amount of weight. (Tr. 167). The doctor reported that during an eight-hour workday, Plaintiff was able to stand and/or walk for less than two hours and sit for less than six hours. (Tr. 167). Dr. Lindberg reported that Plaintiff experienced weakness that limited his ability to perform repetitive movements with his right upper extremity. (Tr. 167). The doctor reported, however, that the only medication that Plaintiff was taking was Flexeril[1] and, furthermore, that the aforementioned limitations were not "expected to last more than 90 days." (Tr. 167).

On November 7, 2006, Plaintiff participated in an MRI examination of his cervical spine the results of which revealed "several levels of [mild to moderate] neural foraminal

---

[1] Flexeril is used to treat "strains, sprains, and other muscle injuries." *See* Cyclobenzaprine, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000699/ (last visited on March 8, 2012).

4

encroachment and focal disc protrusions" with "no significant central canal stenosis." (Tr. 209-10). X-rays of Plaintiff's lumbar spine, taken on February 22, 2007, revealed "normal" alignment with "no significant evidence of spondylosis, spondylolisthesis or other acute or degenerative process." (Tr. 184).

On February 22, 2007, Plaintiff was examined by Dr. Timothy Powers. (Tr. 181-83). Plaintiff reported that he was experiencing "significant" back and neck pain which ranged from 7/10 to 10/10 in severity. (Tr. 181). A physical examination revealed the following:

> On physical examination, he is a thin, 47-year-old white male in no apparent distress. He is approximately 5'6" tall and 135 pounds. He moves about the room without significant difficulty rising from a seated to standing position and ascending the examination table without difficulty. On gross inspection of his cervical spine he shows no evidence of rashes, ecchymosis or previous surgical scars or swelling. He is tender to deep palpation in the midline and over the right paraspinal muscles diffusely. He is also tender over bilateral trapezial muscles. He has limited range of motion on his cervical spine in flexion-extension, side to side bending and rotation secondary to pain. He has a negative Spurling's test.[2] He has normal passive range of motion of shoulders, elbows and wrists without difficulty or pain. He has no signs of shoulder impingement bilaterally. He has normal sensation to light touch throughout, 5/5 strength in all muscle groups of bilateral upper extremities, normal appearing bulk and tone. He has intact and symmetric deep tendon reflexes and a negative Hoffman's test.[3] He has palpable distal pulses and brisk capillary refill. On inspection of his lumbar spine, he has normal overall appearing alignment. He has normal appearing skin throughout without evidence of rashes, ecchymosis or previous surgical scars or swelling. He is nontender to deep palpation over his lumbar spine. He has a normal range of motion both active in

---

[2] A positive Spurling's test suggests the presence of a cervical nerve root disorder. Thomas W. Woodward, M.D., and Thomas M. Best, M.D., Ph.D., *The Painful Shoulder: Part I Clinical Evaluation*, American Family Physician, May 15, 2000, *available at*, http://www.aafp.org/afp/20000515/3079.html (last visited February 17, 2012).

[3] Hoffman's sign is an indicator of a number of neurological conditions including cervical spondylitis, other forms of spinal cord compression, and multiple sclerosis. *See* Hoffman's Sign, available at, http://www.mult-sclerosis.org/Hoffmanssign.html (last visited on February 17, 2012).

> flexion-extension of his lumbar spine. He had a weakly positive straight raise leg test in a sitting position on the right. This is not exacerbated on foot dorsiflexion. He has normal sensation to light touch throughout, 5/5 strength in all muscle groups of bilateral lower extremities and normal appearing bulk and tone. He has intact and symmetric deep tendon reflexes, downgoing toes to Babinski and no ankle clonus. He has palpable distal pulses and brisk capillary refill.

(Tr. 181-82). The doctor provided Plaintiff with medication and instructed him to participate in physical therapy. (Tr. 182).

On March 30, 2007, Plaintiff reported to Dr. Powers that physical therapy "did help" and "he has been able to ride his bike." (Tr. 177). The doctor "recommended continued conservative treatment." (Tr. 177).

On April 19, 2007, Plaintiff was examined by Dr. Sean Growney. (Tr. 186-87). Plaintiff reported that he was experiencing "chronic" neck pain. (Tr. 186). A physical examination revealed the following:

> His neck is supple. He has some tenderness and spasm into the paravertebral muscles. He has full range of motion. Spurling's maneuver is negative for arm pain and positive for neck pain. His shoulder joints are non-tender. His upper extremities show no signs of muscle atrophy, skin discoloration or edema. He has 5/5 grip strength bilaterally. He has symmetrical deep tendon reflexes in the upper extremity tendons. He has 2/4 ulnar and radial artery pulses. Examination of his thoracolumbar spine reveals normal curvature and range of motion. His lower extremities show no signs of muscle atrophy, skin discoloration or edema. He has symmetrical muscle tone and muscle strength. He has symmetrical deep tendon reflexes. His gait is non-antalgic.

(Tr. 186).

On May 9, 2007, Plaintiff received a cervical epidural steroid injection after which he reported experiencing "noticeable improvement." (Tr. 321, 323). On July 9, 2007, Plaintiff

received a second such injection.  (Tr. 321).

On October 30, 2007, Plaintiff reported that he was "still having a tremendous amount of neck pain" and was "only receiving a few weeks worth of relief with the epidural steroid injections."   (Tr. 319).  Dr. Growney decided to instead administer to Plaintiff a cervical facet injection. (Tr. 319).  On January 22, 2008, Plaintiff reported that he "continues to suffer chronic neck pain" and "has waxing and waning periods of pain." (Tr. 317).  Plaintiff was given a series of facet injections.  (Tr. 317).

On November 17, 2008, Plaintiff participated in an MRI of his cervical spine the results of which revealed no evidence of central canal stenosis.  (Tr. 340).  On February 3, 2009, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed no evidence of significant central canal stenosis.  (Tr. 341-42).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4]   If the Commissioner can make a

---

[4] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from degenerative joint and disc disease of the spine, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-18).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[5] subject to the following limitations: (1) he

---

[5] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL

requires a sit/stand option; (2) he can occasionally climb stairs and ramps, but can never climb ropes, ladders, or scaffolds; (3) he can occasionally stoop and crouch; (4) he can balance, kneel, and crawl without limitation; and (5) he must avoid unprotected heights and vibration.  (Tr. 18).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert John McGowan.

The vocational expert testified that there existed approximately 24,500 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 47-49).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar.

---

31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

9

1, 2006).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

a.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the ALJ failed to accord controlling weight to certain opinions expressed by Dr. Kurt Lindberg, one of his treating physicians.  The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ

10

must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544.  In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544.  The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).  Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

On May 15, 2007, Dr. Lindberg completed a questionnaire regarding Plaintiff's residual functional capacity. (Tr. 220-23).  The doctor reported that during an eight-hour workday, Plaintiff was able to sit and stand/walk for "about four hours" each. (Tr. 222).  The doctor also reported that Plaintiff required a sit/stand option and would "sometimes need to take unscheduled breaks" of 15-20 minutes duration during the workday. (Tr. 222).  Dr. Lindberg reported that Plaintiff can "rarely" lift less than 10 pounds and can "never" lift 10 pounds or greater. (Tr. 222).  The doctor reported that Plaintiff can "rarely" look down, look up, turn his head right or left, or hold his head in a static position. (Tr. 222).  Dr. Lindberg reported that Plaintiff can "never" twist, stoop, crouch/squat, climb ladders, or climb stairs. (Tr. 223).  The doctor also reported that Plaintiff was completely unable to use his right hand and fingers to perform grasping, turning, twisting, or fine manipulation activities. (Tr. 223).

The ALJ examined Dr. Lindberg's opinion and rejected it for the following reasons:

Dr. Lindberg's assessment appears to be advocacy for his patient and

11

not commensurate with the actual clinical and objective findings. Dr. Lindberg is a general practitioner and does not have a specialty in orthopedics, so his opinion is somewhat diminished by that factor. Dr. Powers, who is an orthopedic specialist, found relatively good range of motion in flexion and extension; Dr. Lindberg believes the claimant is significantly limited in all directions. This difference appears to be related to Dr. Lindberg's acceptance of the claimant's subjective statements and not on clinical or objective evidence. The lumbar MRI does not indicate the kind of pathology that would be associated with a total ban on all postural activity as suggested by Dr. Lindberg. Dr. Lindberg somewhat contradicts himself - he states that the claimant can sit for four hours and stand for four hours (with the option to alternate), but that he would need to take unscheduled breaks of 15 to 20 minutes an unspecified number of times per day - this would exceed the normal eight-hour work period and is thus not a useful measure of the claimant's exertional limitations. Dr. Lindberg stated that the claimant could not use his right upper extremity to grasp or for fine manipulation, but the claimant testified he can use his right hand to write, button a shirt, or open a jar of pickles. After careful consideration of these factors, I reject Dr. Lindberg's conclusions, as they are not well supported by the objective evidence, they are internally contradictory, and Dr. Lindberg's specialty is not orthopedic medicine. On May 7, 2009, I sent a letter to Dr. Lindberg expressing my concerns and asking him for clarification, but no response has been received.

(Tr. 22).

The ALJ considered Dr. Lindberg's opinion, but found that it was worthy of little weight for several reasons. As the ALJ observed, Dr. Lindberg's opinion is contrary to the observations of Dr. Powers and also Dr. Growney. Dr. Lindberg's opinion is likewise not supported by the objective medical evidence or Plaintiff's reported activities. As the ALJ further observed, it appears that Dr. Lindberg's opinion was based primarily upon Plaintiff's subjective allegations which are not supported by the evidence. The Court concludes, therefore, that the ALJ's decision to accord less than controlling weight to Dr. Lindberg's opinion is supported by substantial evidence.

b.      The ALJ Properly Discounted Plaintiff's Subjective Allegations

In the concluding paragraph of his brief, Plaintiff first raises the issue of whether the ALJ properly assessed Plaintiff's subjective allegations.  The entirety of Plaintiff's "argument" is that "the Commissioner cites no substantial evidence to justify diminishing Mr. Hayward's credibility."  This argument is rejected for two reasons.

First, Plaintiff has an obligation to clearly articulate the basis for his claims of error.  A single sentence consisting of nothing more than an unsubstantiated legal conclusion is insufficient.  Accordingly, the Court finds that Plaintiff has waived any argument that the ALJ failed to properly assess his subjective allegations.  *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).  Moreover, the ALJ addressed in detail his reasons for finding Plaintiff's subjective allegations to be less than fully credible.  (Tr. 22).  The ALJ's rationale is sound and supported by substantial evidence.  Accordingly, the Court discerns no error in the ALJ's evaluation of Plaintiff's subjective allegations.

13

<u>**CONCLUSION**</u>

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  March 13, 2012                                  /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge